### State of Vermont v. George Coita

[568 A.2d 424]

No. 86-381

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed October 20, 1989

**Morse, J.** George Coita was convicted of leaving the scene of an accident (LSA) and driving under the influence (DUI). 23 V.S.A. §§ 1128, 1201(a)(2). These charges arose from an accident on Perkins Pier in Burlington, Vermont, on October 12, 1985, when the defendant ran into a parked vehicle and left the scene. He was apprehended a short time later. On appeal, defendant claims his right to a jury trial under the Vermont Constitution was violated. We reverse and remand.

On January 15, 1986, defendant signed a standard "Waiver of Right to Jury Trial" form while in court for a jury drawing in this case. His attorney and the prosecutor also signed the form, but the court did not sign it. The form relates to the offense of DUI and appears—although we cannot be certain—to have been filled out by defendant's attorney. However, the docket number on the form does not match the docket number of the charges forming the basis of defendant's convictions. Nevertheless, the waiver form was filed as part of the record in this case. The DDR (Docket and Disposition Report) covering the DUI subject to this appeal notes that on January 15, 1986, there was a "waiver of jury."[1]

The court scheduled the trial for February 4, 1986. On that day, the case was continued, and it was noted that the LSA and DUI charges would be tried together. Defendant was given notice of the new trial date and that the matter was set for "court trial." The trial went forward and was concluded on March 18, 1986. Defendant was convicted on both counts.

Chapter I, Article 10 of the Vermont Constitution provides that, "with the consent of the prosecuting officer entered of record," an accused

> may in open court or by a writing signed by him and filed with the court, waive his right to a jury trial and submit the

---

[1] The docket number on the form related to another pending DUI charge against defendant which was later dismissed. Defendant was not in court on January 15 for anything related to the other DUI. Defendant's attorney in this case also represented him in that case. It seems probable—after some sleuthing on our part—that defendant's attorney merely copied the wrong docket number from defendant's file.

issue of his guilt to the determination and judgment of the court without a jury.

Defendant argues that *State v. Ibey*, 134 Vt. 140, 141–42, 352 A.2d 691, 692 (1976), controls this case. The rule in *Ibey* is clear:

> [U]nder the provisions of chapter 1, article 10 of the Vermont Constitution, it must affirmatively appear from a writing signed by the defendant, or from the oral record made in open court, that the defendant personally indicated, understandingly, his desire to waive a trial by jury.

*Id.* at 141, 352 A.2d at 692. We do not, however, reach the question whether defendant properly waived his right to trial by jury because we reverse on a related ground.

■■ The waiver form was not signed by the court indicating its consent, as required by V.R.Cr.P. 23(a).[2] We may, of course, infer that the court did not object to trial by court, but the rule requiring court approval demands more than mere acquiescence. While it is not reversible error for the court to omit making a colloquial record of the defendant's understanding of the right to jury trial and willingness to waive it, *State v. Conn*, 152 Vt. 99, 104–05, 565 A.2d 246, 248 (1989), we hold that the trial court must affirmatively indicate its consent by approving a specific waiver. Silent acquiescence to a waiver does not assure us that the court thought about the decision—not only from the defendant's point of view, but from the prosecutor's perspective and in the interests of justice.

The requirement of court consent, based on Federal Rule of Criminal Procedure 23(a), is intended "to protect the accused from an improvident waiver and to uphold the interest of the public in jury determinations." Reporter's Notes to V.R.Cr.P. 23(a). Professor Moore in his treatise expands upon the rationale as follows:

---

[2] V.R.Cr.P. 23(a) states:

**Trial by Jury; Waiver.** The defendant may in a signed writing or in open court, with the consent of the prosecuting attorney and the court entered of record, waive a jury trial in offenses not punishable by death or imprisonment in the state prison.

The purpose of requiring the . . . court's . . . approval of a jury trial waiver is twofold. The first is to insure that the trial court assesses the defendant's mental competence and his awareness of the benefits and burdens of choosing to forego trial by jury—the prerequisites to valid jury trial waiver. The second is to require the court to carry out its responsibility for preserving jury trials which are the "constitutionally preferred method of disposing of criminal cases" and the right of any defendant charged with a non-petty offense.

8A Moore's Federal Practice § 23.03[2][d], at 23–21 (1989) (quoting *United States v. Martin*, 704 F.2d 267, 272–73 n.4 (6th Cir. 1983)).

As stated in *United States v. Saadya*, 750 F.2d 1419, 1421 (9th Cir. 1985):

The granting of [waiver of jury trial] approval is a "serious and weighty responsibility" . . . that requires the exercise of sound discretion by the district judge. As the Supreme Court noted in *Patton v. United States*, 281 U.S. 276, 312–13, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930), "the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial." The government does not contend that the district judge exercised her discretion in this case. For that reason alone, no effective waiver of the right to a jury trial could have occurred.

The court's approval of a waiver may trigger a colloquy with the parties resolving any doubts as to what prompted the waiver and the wisdom of it.

We find nothing in our precedents or those from the federal court that allows us to overlook the absence of trial court approval. Indeed, in view of the seriousness of the right to be protected, the cases require "strict compliance with the rule." *United States v. Garrett*, 727 F.2d 1003, 1012 (11th Cir. 1984). Nor do we find anything in the facts of this case that would warrant allowing a waiver without trial court approval. Our precedents do not apply an absence of prejudice analysis to jury

trial waivers because of the nature of the right involved. See *State v. Ibey*, 134 Vt. at 141–42, 352 A.2d at 692 (failure to obtain jury trial waiver by the procedure required by the Vermont Constitution requires reversal without any further showing); *In re Bowers*, 130 Vt. 314, 316, 292 A.2d 813, 814 (1972) (judgment in trial by court, after invalid attempt at jury waiver, is "null and void" since court lacked jurisdiction). Further, there is a strong possibility of prejudice in this case. As Professor Moore points out, approval is required so that the trial judge will carefully supervise the waiver to be sure that it is knowingly and intelligently made and is in the defendant's interest. The improperly prepared written waiver, assuming that it applies to this case, is strong evidence that the waiver issue was addressed in haste with no supervision by the trial judge. The course of events here may show that the court understood that defendant had waived a jury trial but is no evidence of the quality of that waiver.

*Reversed and remanded.*

**Peck, J.,** dissenting. The majority finds support for its order in the most harmless imaginable technicality: an inconsequential oversight by the court below. It is no more than an excuse (certainly it is not a reason) to give defendant a second bite of the apple by remanding for a new trial. This is more than sufficient to justify a dissenting voice; nevertheless, under the circumstances here, the majority decision is an affront to common sense, to the concern for judicial economy, and therefore, to the public interest.

The real gravamen of the majority's complaint is the failure of the trial judge to place his signature on a form indicating thereby his approval of a *decision by defendant and his counsel*, approved by the prosecutor, for a trial by court rather than by jury.

In support of its opinion the majority cites *State v. Ibey*, 134 Vt. 140, 352 A.2d 691 (1976). The specific language of that case to which the majority obviously refers, reads:

> [I]t should be noted that . . . an effective waiver of the right to a jury trial in Vermont requires the trial court's consent. V.R.Cr.P. 23(a). The use of Form 33 is *recommended*.

*Id.* at 142, 352 A.2d at 692 (emphasis added).

It is noteworthy and significant here, that this Court itself, in a unanimous decision, written by the then Chief Justice, went no further than to *recommend* use of the form to indicate the trial court's "consent" to a defendant's waiver of a jury trial. Use of the form was not mandated at the time *Ibey* was decided, thirteen years ago, nor is it mandated now by any rule, statute or constitutional provision. Moreover, unlike the requirements pertaining to the prosecution, the defendant and defense counsel in jury waiver cases, there is nothing which dictates that the court's consent must be in writing—nothing. *Ibey* does not support the majority; it is not on point.

The only mandate imposed on the court by V.R.Cr.P. 23(a) is that its consent appear on the record. It is evident that the majority, defying common sense in glorifying "form" over substance, have pulled from the air an interpretation which requires the consent, not only to be in writing, but to be indicated on the "form"; otherwise any consent-in-fact, an unsolicited request by the defendant himself for a trial by court, and an unusually obvious absence of the slightest prejudice, does not satisfy the requirement that it appear "on the record."

The majority waves about like conquering banners, quotes from and references to, decisions from courts of other jurisdictions, with the claim that they support and serve as precedent for its decision. It is painfully obvious that the majority did not bother to read these cases, at least with any care.

The cases quoted or referred to by the majority are: *United States v. Martin*, 704 F.2d 267 (6th Cir. 1983); *United States v. Saadya*, 750 F.2d 1419 (9th Cir. 1985) (quoting *Patton v. United States*, 281 U.S. 276, 312-13 (1930)). Not *one* of these cases, including *Patton* from the United States Supreme Court, address the issue presented by the case before us: whether the trial court's approval of a defendant's request for a court trial *must* be in writing in order to avoid a per se reversal.

Each one of the cited cases, although discussing court approval of court trials, go no further than our own *Ibey* decision. In fact, they do not even go as far as does *Ibey*; not one of them

even recommends, to say nothing of mandating, that the court's consent be indicated in writing, even by signature.

One statement in *Patton* merits comment. The Court said: "the duty of the trial court [in cases involving consent to a court trial] is not to be discharged as a mere matter of rote." 281 U.S. at 312. It is difficult to imagine anything more conducive to a "rote" response than o-filling, by a scrawled signature in a small blank "box" on a printed bureaucratic form.

A final note on the not-in-point citations so enthusiastically relied upon by the majority. I comment because it is typical of the semantics so often employed in judicial opinions in support of a desired result. In *Martin*, 704 F.2d at 273, the opinion recites that jury trials are the "*constitutionally preferred* method of disposing of criminal cases." (Emphasis added.)

I have examined both the Sixth Amendment to the United States Constitution, and Chapter 1, Article 10 of the Vermont Constitution. Neither contains the slightest indication of a *preference* for jury trials in criminal cases. A conscientious analysis of the relevant language in these sections show that they do no more than protect what the majority of criminal defendants now, and in the past, prefer in most cases: a trial by jury. In short, the "preference" lies with the accused, not in the constitutions themselves. It is the right to the availability of that preference which is guaranteed.

Further, I think there have been, and can still be, from time to time, certain concerns, such as public outrage at a particularly heinous crime, sensational media coverage, the seeming likelihood of guilt, prejudice against the class of people of which the defendant is a member, when there is a real danger, or its apprehension, that a jury, in the heat of the situation, may be little better than a lynch mob. When such a situation exists, in fact or in the perception of the defendant, he may well be convinced that his best chance for a fair, unbiased disposition of the charges against him lies in a trial by court. In such instances it is no more than grandiloquent legal wordsmanship to say that jury trials are *preferred* by both constitutions.

I agree that trial courts should be diligent in assuring that a defendant who indicates a preference for a trial by court is fully

aware of his constitutional and absolute *right* to a jury, and that this diligence is reflected in the record of the case. Nevertheless, given that the record is clear that the "weighty responsibility" of the court has been satisfied, I confess to some concern that a defendant can be almost arbitrarily *denied* a court trial by a court or the state on the basis of a ludicrously conceived constitutional "preference." I see no reason why a trial by court should be any less of a *right* than a jury trial—again assuming the record indicates that the defendant has been made fully aware of what he is doing and the possible consequences thereof.

There is no reason why the standards for review of an election in favor of a court trial need to be any different from those applicable to a review of a guilty plea. Indeed, the consequences of the latter can be even more serious than those which may flow from a court trial.

Given the fact that there exists nowhere any express requirement for a written consent, the following set of circumstances appear indisputably. The request for a trial by court was made by defendant and his counsel and the prosecution gave its approval; all three made this waiver expressly by signing the "form." There is nothing in the majority opinion which finds any fault with this procedure at this point.

Thereafter, the defendant received *exactly* what he himself wanted and asked for: a trial by court. At no time or at any point, from beginning to end, did the defendant indicate an objection based on an alleged failure of the court to put its consent on the record, in writing or otherwise. Nor does the majority find that the trial itself was not eminently fair in all respects.

If ever there was a case of invited error, of trapping the trial court, this is such a case. It was competent for defendant at any time to call the now-claimed error to the court's attention; instead defendant squirreled away his claim, keeping it in secret, reserved for future use if the court found him guilty—which it did. Now the defendant has gulled the majority into supporting his gamesmanship. What has happened to our many decisions holding that a claimed error must be brought to the attention of the trial court, giving the court the opportunity to consider it,

otherwise the claim will not be considered by this Court on appeal? See, e.g., *Duke v. Duke*, 140 Vt. 543, 545, 442 A.2d 460, 462 (1982).

Further, the claimed error here is not one of constitutional dimensions and does not reach the level of plain error. *State v. Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986) (absent plain error, alleged error not brought to trial court's attention will not be considered on appeal). Also, what has happened to our rule that even errors of constitutional dimensions, and certainly most errors at a lower level of concern, may be harmless in the absence of a showing of prejudice? *State v. Nash*, 144 Vt. 427, 434, 479 A.2d 757, 761 (1984).

It is beyond comprehension how the majority gives any credence to defendant's assertion that his right to a jury trial has been "violated." He got exactly what he wanted and asked for. He didn't *want* a jury trial and went through the entire proceeding without indicating the slightest dissatisfaction by objection or otherwise based on a lack of judicial consent by signature. To find a violation under such circumstances is naive credulity which requires the majority to postulate that (assuming consent in writing is not a matter of record) the court *might* have tried a case, from opening through judgment, to which it did *not* consent. This is absurd.

To avoid any such nonsensical hypothesis, which flows necessarily from the result reached by the majority, I restate here what I said above: that there is nothing which requires the trial court's consent to be in writing. That being so, two alternatives are open to us. First, the consent may be stated orally in satisfaction of V.R.Cr.P. 23(a), provided it appears on the record. In this case I agree with the State that the trial judge did in fact make such a statement. At the very beginning of trial proceedings the court was comparing the status of the case at that point as identical to another; among the points of similarity, the court noted that this is to be a "[t]rial by court." Again it is absurd to suggest that this clear and affirmative statement did not indicate consent to a trial by court. Otherwise it would be necessary to duplicate the majority's absurdity and say that the court was about to embark on a trial to which it did not consent.

The second alternative, even assuming the record is silent, might be styled "consent by implication." In other words, the court's consent must be implied from the fact that it conducted the trial at all; we cannot assume that the court did something of which it disapproved, when it could easily have withheld approval had it felt it appropriate to do so.

I find an analogous holding in an earlier case. Although the Court in that case is addressing a different problem, i.e., the factors to be considered by the trial court in ruling on motions to suppress a defendant's prior convictions in a criminal case, the opinion nevertheless said this:

> If the record were silent, we could assume such compliance with a well-established and clearly stated standard
> . . . .

*State v. Jarrett*, 143 Vt. 191, 193, 465 A.2d 238, 240 (1983). The valid application of this analogy is so obvious that there is surely no need for further elaboration on the point. Ergo, I will not elaborate further.

There remain two points, which, although implicit throughout, strongly support this dissent and should be conclusive. Accordingly, both warrant at least a brief independent discussion.

The pages of the Vermont Supreme Court Reports, to say nothing of the Vermont Key Number Digest, are figuratively awash in holdings going back many years, that issues not raised by objection or otherwise at the trial court level will not be considered by this Court on appeal. *State v. Lettieri*, 149 Vt. 340, 342, 543 A.2d 683, 685 (1988). This holding is enforced even against most constitutional claims. *State v. Hamlin*, 148 Vt. 232, 233, 531 A.2d 598, 599 (1987); *In re Mullestein*, 148 Vt. 170, 175, 531 A.2d 890, 893 (1987).

There is no doubt whatever that defendant went through his full trial without a whisper of objection or protest based on an alleged failure of the court to consent to the form of the proceedings. There is simply no explanation made, or indeed possible, for the majority's indifference to our precedential rulings which have been inevitably applied to far more serious errors than any claimed here. The majority's action is as inexcusable as it is mysterious. This is particularly so since the cases cited

in the opinion as supporting its result are not even in point, and the so-called "rule" of the *Ibey* case has been misstated.

Secondly, and even more baffling than the preservation-of-error issue, is the majority's blind and deaf reaction to what I will call the rule of prejudice. Again, the case reports and digests are filled with almost countless holdings by this Court that, in substance, error in the trial court is not, standing alone, sufficient for per se reversal. The defendant in a criminal case must show, not only that the trial court committed error, but more importantly, that he was prejudiced by it. Thus, in the face of an alleged violation of one of our rules of criminal procedure, the opinion of a unanimous Court in a 1985 case reads in part:

> If his allegation is true it constitutes a *technical* violation of V.R.Cr.P. 11(c)(1). In such cases *the burden of proving . . . prejudice resulting therefrom is on the petitioner.*

*In re Kivela*, 145 Vt. 454, 457, 494 A.2d 126, 128 (1985)[1] (emphasis added).

There is no need for additional citations to the same effect. Needless to say, they are legion.[2]

The circumstances of this case as described throughout this dissent show that defendant here suffered no prejudice from the error alleged, nor has he sustained in any way his burden to prove such prejudice. The error, if it existed at all (which I do not concede), was *highly* technical at best; even its potential for prejudice was less than the rule violation claimed in *Kivela*. There is nothing, anywhere, including *Ibey*, which mandates use of the "form" by the court, or that its consent be indicated in writing. No justification for the majority's action exists; reversal and new trial is uncalled for and at best most unfortunate. The judgment should be affirmed.

---

[1] The Court went on to say: "If there were any shortcomings, petitioner has not sustained his burden of showing that he was prejudiced thereby." *Id.* at 458, 494 A.2d at 129.

[2] See particularly 4 Vermont Key Number Digest, Criminal Law key numbers 1162–1163(4).